A95A0983. JONES v. THE STATE.
(458 SE2d 894)

ANDREWS, Judge.

Jones appeals from the judgment entered following a jury verdict finding him guilty of burglary.

On June 7, 1994, Jones was discovered inside the Grace Manufacturing Company building by one of the building's tenants, Mr. Langston. Langston testified that he saw someone dragging trash cans across the floor and called the police. When the police arrived, they found Jones inside the building and arrested him, charging him with burglary.

The evidence at trial showed that the burglar bars on the outside of a window in the building were pried loose and a large trash can filled with tools was directly underneath the window. The police also found several five-gallon buckets filled with power tools inside the building.

One of the arresting officers testified that after he was taken into custody, Jones told the officers that drug dealers were holding his girl friend and his child hostage at a house on North Avenue. The officer said that Jones told them he had broken into the building to steal tools to pawn in order to pay the drug dealers money he owed them for dope. Jones claimed that the drug dealers threatened to hurt the woman and her child if Jones did not take enough tools to pay what Jones supposedly owed them.

The officers then put Jones into a patrol car and went to the house on North Avenue where Jones claimed the drug dealers were holding the hostages. But, when they arrived at the house, they were unable to find anyone matching the description Jones gave of his girl friend, the child, or the drug dealers.

There was evidence at trial of other, similar crimes. In November 1992, officers found Jones pulling a "herbie-curbie" full of stolen frozen foods across Marietta Street. Also, that same month, an officer stopped Jones and discovered that his pickup truck was loaded with power tools stolen from the CSX Railroad property on Marietta Boulevard.

The jury found Jones guilty of burglary and the court sentenced him to ten years to serve five, with the balance probated. Jones ap-

peals, bringing the following enumerations of error.

1. First, Jones claims that the trial court erred in denying his request to place the jurors in the jury box during voir dire. OCGA § 15-12-131 provides that it is the duty of the court, on the request of either party, to seat the jurors in the jury box in panels of 12 so they may be questioned by counsel. In *Lett v. State*, 160 Ga. App. 476 (287 SE2d 384) (1981), the court held that the trial court's refusal to seat the jurors in the jury box for voir dire was erroneous as a matter of law, but did not reach the issue of whether the error was harmless. *Lett*, supra at 477. In *Mathis v. State*, 176 Ga. App. 362 (336 SE2d 299) (1985), the court again held that it was error to deny the request to place the jurors in the jury box, but in that case, the appellant was required to voir dire all of the prospective jurors en masse. *Mathis*, supra at 363. Further, the court found that the error was harmless in light of the overwhelming evidence of guilt. Id.

In the instant case, the trial court determined that voir dire would be facilitated by having the jurors seated in panels of 12 in the jury box and on benches behind the defense counsel's table. Further, the court stated that not only would defense counsel have no problem in viewing the panels of jurors seated on benches behind defense counsel's table, but, the panels seated on benches behind the rail would be closer than those seated in the jury box. Also, Jones' attorney was not required to question the jurors en masse, but in panels of 12 as required by the statute. Therefore, there was no error. *Perez v. State*, 258 Ga. 343, 344 (2) (369 SE2d 256) (1988); *Atha v. State*, 198 Ga. App. 323, 324 (5) (401 SE2d 338) (1991). In any event, the evidence of guilt in this case was overwhelming, and thus, the error, if any, was harmless.

2. Secondly, Jones claims that he should be granted a new trial because he received ineffective assistance of counsel, which denied him his right to assistance under the Sixth Amendment of the United States Constitution. Specifically, Jones claims that his attorney did not conduct enough pretrial investigation. Jones argues that his attorney should have hired an investigator or investigated himself in order to find witnesses who could support Jones' defense of coercion.

A trial court's finding that a defendant has not been denied effective assistance of trial counsel will be affirmed unless clearly erroneous. *Warren v. State*, 197 Ga. App. 23 (1) (397 SE2d 484) (1990). Here, Jones must overcome the strong presumption that defense counsel's conduct falls within the broad range of reasonable professional conduct. *Snyder v. State*, 201 Ga. App. 66 (8) (410 SE2d 173) (1991). "To establish ineffective assistance of counsel, [a defendant] must show that his counsel's performance was deficient and that the deficient performance prejudiced his defense. [Cits.]" The test is whether there is a reasonable probability the jury would have reached

a different verdict, absent the error of counsel. *Gross v. State*, 262 Ga. 232, 233-234 (1) (416 SE2d 284) (1992).

In this case, Jones has not established that he was denied reasonably effective assistance of counsel. At the hearing on Jones' motion for new trial, defense counsel testified that Jones was unable to give him any names or addresses of witnesses who could support his claim of coercion. Defense counsel also testified that the coercion defense was not the only defense available to Jones and that he intended to show that the State could not prove Jones went in to steal anything because he never left with anything. Moreover, as the court stated at the hearing on Jones' motion for new trial, there was no evidence that these witnesses ever existed, much less that they could have been located given the vague and differing descriptions Jones gave his trial counsel. The trial court pointed out that there was still, months later, no evidence that these witnesses ever existed. Therefore, Jones' counsel was not ineffective for failing to go out and attempt to find these witnesses. Moreover, even if counsel's failure to investigate did fall below the standard of effective representation, given the overwhelming evidence of guilt in this case, this failure was not likely to have produced a different outcome at trial. See *Gross*, supra at 233-234.

3. Thirdly, Jones claims that the trial court erred in denying his motion for a continuance and that because of this he was denied a fair trial. Jones claimed that because the trial court denied his motion for continuance, trial counsel did not have time to find the witness or witnesses who could support Jones' story of coercion. As previously discussed, the trial court stated that it was doubtful whether or not these witnesses even existed, and therefore, the court was unwilling to grant a continuance.

"A motion for continuance based on absence of a witness is addressed to the sound discretion of the trial judge and an appellate court will not interfere unless it is clearly shown it has abused its discretion." *Ledford v. State*, 173 Ga. App. 474, 476 (326 SE2d 834) (1985). In this case, Jones was not even able to identify any witnesses who would be called to testify, and therefore, the trial court did not err in denying Jones' motion for continuance.

*Judgment affirmed. McMurray, P. J., and Blackburn, J., concur.*

Decided July 6, 1995.

*Ellis W. Peetluk*, for appellant.

*Lewis R. Slaton, District Attorney, Charles E. Rogers II, Carl P. Greenberg, Assistant District Attorneys*, for appellee.